Gordon R. Edwards v. Commissioner.
Edwards v. Commissioner
Docket No. 49399.
United States Tax Court
T.C. Memo 1954-11; 1954 Tax Ct. Memo LEXIS 238; 13 T.C.M. (CCH) 381; T.C.M. (RIA) 54117; April 16, 1954, Filed *238 Transaction between husband and wife terminating their interests in community property by a settlement agreement embodied in a divorce decree was tantamount to a sale by the wife of her interest in certain community assets upon which a gain was realized, rather than a mere partition or division of community property. Emil Corenbleth, Esq., for the petitioner. Paul M. Newton, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiency in income tax and penalties for the year 1950: Penalties
Deficiency
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
$2,051.96
$497.59
$331.75
This is a companion case to Jessie Lee Edwards, Docket No. 38029, with which it was consolidated for hearing. The primary issue here was the sole issue there. It is whether a property settlement agreement entered into between petitioner and his wife incident to a divorce proceeding with reference to community property resulted in a mere partition or division in which the wife realized no taxable gain, or a purchase and sale in which the petitioner purchased the wife's one-half interest in *239 certain of the community assets. On the resolution of this issue depends petitioner's basis for gain or loss in certain of the assets which he thereafter sold. There is also a question involving the propriety of the imposition of the penalties above referred to. Findings of Fact The petitioner, Gordon R. Edwards, and Jessie Lee Edwards were married in Fort Worth, Texas, on February 16, 1913. They lived together as husband and wife until about May 1948 when they separated. They had been residents of Texas continuously since about 1925 and all the property they owned at the time of their separation was community property under the Texas laws. Gordon's income tax return for 1950 was filed with the collector of internal revenue for the second district of Texas, at Dallas, Texas. On March 11, 1948, Jessie filed a suit for divorce in the appropriate court in Dallas County, Texas. She prayed, inter alia, for divorce, alimony pendente lite of $1,000 per month, attorney fees for $10,000, temporary restraining orders against banks, etc., and asked that all other community property be divided equally. On March 18, 1949, pursuant to court order, Gordon filed in inventory and appraisal *240 of community property. During the succeeding two months a number of conferences were held looking toward a property settlement. Independent appraisals of the real estate were had. The principal disagreement arose about the stock of Gordon Edwards, Inc., but a valuation was finally agreed upon. In looking toward a settlement, Jessie was insistent on receiving cash for her share of the community property. She was inexperienced in business and wanted to assume as little business risk as possible. On May 20, 1949, a contract was entered into between Jessie and Gordon with reference to the community property. The primary intention of the parties was that it be divided equally and they recited in the agreement that the division provided for therein was "fair, just and equitable." The agreement assigned the following valuations to the various items comprising the community property: ITEM NO. 1. REAL ESTATE
Tract #1. 1440 La Senda Place,
Dallas, Texas
$ 17,500.00
Tract #2. Lot at Greenbier and
La Senda Place, Dallas,
Texas
2,800.00
Tract #3. Part of Lot 3, and all
of Lots 4 and 5, Block
4790-D, East Kessler
Addition, Dallas, Texas
5,300.00
Tract #4. Lots A through F, Block
4788-1/2-B East Kessler
Addition, Dallas, Texas
13,020.00
Tract #5. 5229 Bryan Street, Dal-
las, Texas
7,780.00
Tract #6. Three crypts in Rest-
land Memorial Ceme-
tery, Dallas, Texas
1,638.75
Agreed valuation of Item No. 1 -
Real Estate
$ 48,038.75
ITEM NO. 2. NOTES RECEIVABLE
1. Note of Earl Edwards
$ 380.00
2. Note of Mrs. Ouida Youngblood
800.00
Agreed valuation of Item No. 2 -
Notes Receivable
$ 1,180.00
ITEM NO. 3. PERSONAL PROP-
ERTY
1. Household furniture and fix-
tures
$ 1,000.00
2. Chrysler Sedan Automobile
2,676.50
3. Cash in Bank
73.49
Agreed valuation of Item No. 3 -
Personal Property
$ 3,749.99
ITEM NO. 4. STOCK
500 shares in Gordon Edwards,
Inc., par value $100 per share
$ 93,858.75
Agreed valuation of Item No. 4 -
Stock
$ 93,858.75
ITEM NO. 5. INSURANCE
1. Policy No. 1134308 - Life Insur-
ance - Union Central Life Insur-
ance Company - Cash value
$ 1,268.00
2. Policy No. 1406151 - Life Insur-
ance - Union Central Life Insur-
ance Company - Cash value
2,495.00
3. Policy No. 558463-12-A-85 - Life
Insurance - Bankers Life Com-
pany - Cash value
780.00
4. Contract No. 468529 - Annuity -
Southwestern Life Insurance
Company - Cash value
13,458.58
5. Contract No. 478480 - Annuity -
Southwestern Life Insurance
Company - Cash value
6,914.21
6. Contract No. 679186 - Annuity -
Southwestern Life Insurance
Company - Cash value
13,358.99
7. Policy No. 735200 - Group -
Southwestern Life Insurance
Company - Cash value
0
Agreed valuation of Item No. 5 -
Insurance
$ 38,274.78
TOTAL COMMUNITY ESTATE
$185,102.27
*241 The preamble to the agreement recited, among other things, the following: "Whereas, the Parties are possessed of certain community property, and the said Parties desire to partition between themselves the community property; * * *" Because he believed the Ouida Youngblood note was worthless, Gordon gave it to Jessie and it was not a factor in the final settlement. Under the agreement Jessie was to receive, in addition to the Ouida Youngblood note the sum of $92,151.13 to be paid to her in personal property, cash and note as follows: Household furniture and fixtures
$ 1,000.00
Chrysler automobile
2,676.50
Cash
40,000.00
Note of Gordon R. Edwards
48,474.63
Total
$ 92,151.13 Gordon was to receive the following community property: Real Estate
$ 48,038.75
Note of Earl Edwards
380.00
Cash in bank
73.49
Gordon Edwards, Inc., Stock
93,858.75
Life Insurance Policies and Annuity
Contracts (Cash Value)
38,274.78
Total
$180,625.77
The agreement specified and the parties understood that in order to raise the $40,000 cash required, Gordon would have to borrow money on the life insurance policies and annuity contracts referred to and *242 that he would have to sell certain of the real estate enumerated. In order to raise the $40,000 cash, Gordon did borrow against the life insurance and annuity contracts a few days prior to June 6, 1949. On June 6, 1949, the appropriate Texas court entered a judgment incorporating and approving as "fair, just and reasonable" the May 20, 1949 agreement, granting a divorce and ordering Gordon to pay $6,000 on Jessie's attorney fees. The terms of the May 20, 1949 agreement were carried out by the parties and each received the property set out and executed such deeds, bills of sale, notes and other conveyances necessary to effect such transfers. By November 7, 1949, Gordon had paid the $48,474.63 required to liquidate the note referred to in the agreement. Ultimate Finding The consummation of the settlement agreement was tantamount to a sale by Jessie to Gordon of her share in certain of the community assets. Opinion In view of our ultimate finding and our decision in the companion case of Jessie Lee Edwards, Docket No. 38029, petitioner must avail on the primary issue. A rule 50 computation will be necessary because of an alternative computation proposed in the statement *243 accompanying the deficiency notice. The record does not contain sufficient evidence to justify any finding with reference to the penalty issues except that the failure to file declaration of estimated tax was not due to reasonable cause, but was due to willful neglect. This may also result in a penalty for substantial underestimate. The amount of these penalties can be resolved in the Rule 50 computation. Decision will be entered under Rule 50.